**Jason L. INLOW, Heather N. Johnson, Jeremy H. Inlow and Sarah C. Inlow, Appellants–Plaintiffs,**

v.

**HENDERSON, DAILY, WITHROW & DEVOE, a Partnership, Great–West Life & Annuity Insurance Company, Whitney B. Grayson, Grayson & Associates, Paul M. Harrington and The Heartland Insurance Group, Appellees–Defendants.**

No. 49A02–0305–CV–432.

Court of Appeals of Indiana.

March 11, 2004.

Stephen B. Caplin, Caplin Park Tousley & McCoy, Marvin J. Frank, Robert M. Hamlett, Frank & Kraft, Indianapolis, IN, Attorneys for Appellants.

Nelson Nettles, John M. Choplin, Norris Choplin & Schroeder, Mary Jane Lapointe, McMains Foster & Morse, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

NAJAM, Judge.

**STATEMENT OF THE CASE**

Jason L. Inlow, Heather N. Inlow, Jeremy H. Inlow, and Sarah C. Inlow (collectively "Inlow Children") appeal from the trial court's denial of their motion to cor-

rect error[1] regarding attorney's fee awards granted to The Heartland Insurance Group ("Insurance Brokers") and Great–West Life and Annuity Insurance Company ("Great–West") (collectively "the Appellees"). The Inlow Children present the following issues for our review:

1. Whether the trial court had jurisdiction to award attorney's fees.

2. Whether the Appellees presented sufficient evidence to support the attorney's fee awards.

3. Whether the trial court abused its discretion when it awarded the Appellees attorney's fees.

We affirm and remand.[2]

**FACTS AND PROCEDURAL HISTORY**

The attorney's fee awards the Inlow Children challenge in this appeal followed the dismissal of their complaint against the Appellees and other parties. We affirmed the trial court's dismissal of the complaint in *Inlow v. Henderson, Daily, Withrow & DeVoe, et al.,* 787 N.E.2d 385 (Ind.Ct.App. 2003) (*"Inlow I"*), *trans. denied.* In *Inlow I,* this court explained the facts and procedural history underlying this appeal as follows:

> ... [The Inlow Children] appeal the trial court's dismissal of their amended complaint bringing suit against a law firm, attorneys working for that firm, insurance companies, and agents of those insurance companies. The Inlow Children brought claims against the law firm of Henderson, Daily, Withrow & DeVoe and eighteen attorneys of

---

1. This cause was initially brought in Judge Gerald S. Zore's court, but it was transferred to Judge Thomas J. Carroll's court, pursuant to Trial Rule 79(H), after Judge Zore ruled on the motions for attorney's fees. After the transfer, Judge Carroll ruled on the Inlow Children's motion to correct error, which is

the final judgment appealed from. *See* Ind. Appellate Rules 2(H)(4), 9(A)(1).

2. We hereby deny the Insurance Brokers' motion to strike certain portions of the Inlow Children's brief on appeal.

Henderson, Daily, Withrow & DeVoe in their individual capacities (collectively, "Henderson Daily"). They also asserted claims against Whitney B. Grayson, Grayson & Associates, Paul M. Harrington, The Heartland Insurance Group, and Great–West Life and Annuity Insurance Company.... These claims were brought because of harms allegedly caused to Lawrence W. Inlow and his estate, which diminished the value of the estate.

The Inlow Children argue that in a number of capacities they: (1) have standing to maintain their claims, (2) are real parties in interest, and (3) have stated claims that avoid dismissal under Indiana Trial Rule 12(B)(6). The Inlow Children also complain that the trial court erroneously struck Counts IV through VIII of their motion for leave to file amended complaint and erroneously denied their motion to amend the amended complaint by interlineation. They contend that even if the dismissal of their claims, the striking of Counts IV through VIII of their motion for leave to file amended complaint, and the denial of their motion to amend the amended complaint by interlineation were proper, they are still entitled to reasonable time to seek the ratification, joinder, or substitution of the successor trustee and successor personal representative according to Indiana Trial Rule 17(A)(2). Aside from their claims brought as assignees of the successor personal representative and attempted claims as assignees of the successor trustee, each claim the Inlow Children assert ultimately arises from their status as heirs. The Probate Code carefully limits the intrusion of heirs and other interested persons into the personal representative's administration of an estate. As heirs, the Inlow Children have not followed the procedures outlined in the Probate Code for intervening in administration to sue alleged tortfeasors of the decedent and his estate. Moreover, the Inlow Children may not claim capacity to sue as assignees of the successor trustee for harms befalling the estate. A successor trustee has no authority to sue for harms resulting to an estate and, therefore, has no authority to assign such claims. Finally, the assignments made by the personal representative and the successor personal representative were invalid and are no basis for suit against Henderson Daily and the Insurers.

We, therefore, affirm the trial court's: (1) dismissal of each count of the amended complaint, (2) denial of stricken Counts IV through VIII of the motion for leave to file amended complaint, and (3) denial of the motion to amend the amended complaint by interlineation. We deny the Inlow Children's request to remand this cause to the Marion Superior Court for the ratification, joinder, or substitution of the successor personal representative through Trial Rule 17(A). Any further action they take must be within the bounds of the Probate Code as we will explain more fully below.

## FACTS

Lawrence W. Inlow created the Lawrence W. Inlow Irrevocable Children Trust (Inlow Trust) for the benefit of his children and named himself trustee. As trustee of the trust, he purchased an insurance policy from Great–West Life and Annuity Insurance Company (Great–West Life) on July 8, 1996. The policy designated the trustee of the Inlow Trust as the beneficiary of the policy. In the event of Lawrence's death, Great–West Life was obligated to pay ten million dollars to the successor trustee who was yet unnamed.

On May 21, 1997, Lawrence Inlow died intestate, leaving six heirs: Anita Inlow, his second wife; Jesse Inlow, Lawrence and Anita's minor child; and the four plaintiffs to this action who are children of Lawrence's first marriage. After Lawrence's death, Karl Kindig was appointed personal representative of the Inlow Estate. Henderson Daily provided legal services to Kindig in his capacity as personal representative. Kindig later executed an assignment in favor of the Inlow Children of all claims belonging to the personal representative against all other persons, including any claims against Henderson Daily. With the consent of the Inlow Children, the successor personal representative agreed to pay Kindig $200,000 allegedly for his services to the Inlow Estate. The probate of the Inlow Estate is still pending in the Hamilton Superior Court as of the filing of the appellate briefs in this action.

On October 10, 2001, the Inlow Children filed an amended complaint for damages. In their amended complaint, the Inlow Children asserted claims of negligence, "intermeddling," and legal malpractice against Henderson Daily. They asserted these claims for harms allegedly caused to the Inlow Estate to the detriment of their intestate shares of the property. Though the trial court permitted the three claims against Henderson Daily, it struck five others the Inlow Children attempted to assert. As for the insurance companies and agents, the Inlow Children brought claims of negligence and breach of contract, despite the fact that Great–West Life had paid the policy proceeds in full. In addition to claims brought in the amended complaint, the Inlow Children contend that they were entitled to assert claims assigned by the successor trustee of the Inlow Trust. They attempted to assert these assigned claims, not as part of their amended complaint, but in a motion to amend the amended complaint by interlineation. The trial court denied their motion to amend the amended complaint by interlineation.

In response to the amended complaint, Henderson Daily and the Insurers filed separate motions to dismiss. Among other arguments, they contended that the Inlow Children lacked standing to bring claims, the probate court had exclusive jurisdiction over certain claims, the Inlow Children were not real parties in interest, and the Inlow Children failed to state claims upon which relief could be granted. The trial court granted the motions to dismiss with prejudice in favor of all the defendants. The Inlow Children now appeal.

*Id.* at 388–89.

In May 2002, the Appellees filed their motions for attorney's fees with the trial court. And on June 6, 2002, the trial court clerk filed a notice of completion of the record for appeal in *Inlow I*. On July 10, 2002, the trial court denied the Appellees' motions for attorney's fees. The trial court did not believe that it had jurisdiction to consider those motions under Indiana Appellate Rule 8, which provides that this court acquires jurisdiction when the trial court clerk issues the notice of completion of the record.

The Appellees then filed motions to correct error alleging that the trial court did retain jurisdiction to award attorney's fees. The trial court granted those motions and scheduled a hearing on the Appellees' motions for attorney's fees. Following the hearing, the trial court awarded $71,343.58 in attorney's fees to the Insurance Brokers and $283,744.12 in attorney's fees to Great–West.[3] The Inlow Children filed a

---

3. This litigation began in 1998.

motion to correct error, which the trial court denied. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Jurisdiction

■ The Inlow Children first contend that the trial court did not have jurisdiction to award attorney's fees since this court acquired jurisdiction before those awards were granted. Indiana Appellate Rule 8 provides in relevant part that this court acquires jurisdiction "on the date the trial court clerk issues its Notice of Completion of Clerk's Record." But our case law makes clear that the trial court retains some jurisdiction to consider certain matters which are unrelated to the judgment being appealed. Indeed, this court has explained that the purpose of the rule is to "prevent[ ] the confusing and awkward situation of having the trial and appellate courts simultaneously reviewing the correctness of the judgment." *Southwood v. Carlson*, 704 N.E.2d 163, 165 (Ind.Ct.App. 1999) (citation omitted). And this court has noted that a trial court may retain jurisdiction to reassess costs or "preside over matters which are independent of and do not interfere with the subject matter of the appeal." *Clark v. State*, 727 N.E.2d 18, 21 (Ind.Ct.App.2000), *trans. denied; see also, Schaefer v. Kumar*, 804 N.E.2d 184, 191, 2004 WL 385746 *8 (Ind.Ct.App. March 3, 2004) (holding after appellate court acquires jurisdiction, " 'there remains in the trial court no power to . . . reopen the issues and extend the litigation between the parties affecting the subject-matter of the appeal[.] )' " (quoting *Westfall v. Wait*, 161 Ind. 449, 68 N.E. 1009, 1010 (1903)).

Here, had the Inlow Children prevailed against the Appellees in *Inlow I*, then the Appellees would no longer have been "prevailing parties" and would not be entitled to attorney's fees. *See* Ind.Code § 34–52–1–1. Thus, the trial court's awards were premature under the circumstances.[4] And we cannot say that the attorney's fee awards, which are based on the alleged frivolousness and unreasonableness of the Inlow Children's action, are "independent of" the subject matter of *Inlow I. See Clark*, 727 N.E.2d at 21. But because this court ultimately affirmed the trial court's decision to grant the Appellees' motions to dismiss in *Inlow I*, the principles of judicial economy dictate that we address the merits of this appeal.

### Issue Two: Evidence

■ The Inlow Children next contend that the Appellees did not present any evidence to support the trial court's attorney's fee awards. The Appellees respond that, at the hearing, they asked the trial court to incorporate into the record the designated evidence they had previously submitted in support of their motions for attorney's fees. The Inlow Children maintain that that was insufficient. We cannot agree.

The Inlow Children do not cite to any direct authority in support of their contention. And we know of nothing prohibiting the method used here to incorporate designated evidence into the record. Indeed, the Inlow Children did not object to the Appellees' requests to incorporate the evidence into the record during the hearing. Moreover, the Inlow Children did not present any evidence at the hearing, but asked the court to refer to "the affidavits tendered by [counsel] on September 20th . . . attesting to [the Inlow Children's] good faith in pursuing the action and con-

---

4. Of course, had the trial court awarded attorney's fees *prior* to this court's acquiring jurisdiction, that would have been proper, and the Inlow Children could have appealed those awards in *Inlow I*.

tinuing to pursue it after the course of discovery."

The Appellees' designated evidence incorporated into the record consists of affidavits and relevant portions of the pleadings. Thus, the Appellees did submit evidence to support the trial court's attorney's fee awards. *See, e.g., Childress v. Buckler*, 779 N.E.2d 546, 553 (Ind.Ct.App.2002) (holding trial court did not abuse discretion in attorney's fee award where defendant attached affidavit to motion for attorney's fees); *see also Fox v. Galvin*, 177 Ind.App. 654, 381 N.E.2d 103, 108 (1978) (holding "what transpires from beginning to end of a lawsuit is indirect evidence of what constitutes reasonable attorney's fees.").

### Issue Three: Attorney's Fee Awards

■ The Inlow Children's final contention is that the trial court abused its discretion when it granted the Appellees' motions for attorney's fees. Indiana Code Section 34–52–1–1 provides in relevant part:

(a) In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law.

(b) In any civil action, the court may award attorney's fees as part of the cost to the prevailing party, if the court finds that either party:

(1) brought the action or defense on a claim or defense that is frivolous, unreasonable, or groundless;

(2) continued to litigate the action or defense after the party's claim or defense clearly became frivolous, unreasonable, or groundless; or

(3) litigated the action in bad faith.

■ A claim is "frivolous" if it is made primarily to harass or maliciously injure another; if counsel is unable to make a good faith and rational argument on the merits of the action; or if counsel is unable to support the action by a good faith and rational argument for extension, modification, or reversal of existing law. *Commercial Coin Laundry Systems v. Enneking*, 766 N.E.2d 433, 441 (Ind.Ct. App.2002). A claim is "unreasonable" if, based upon the totality of the circumstances, including the law and facts known at the time, no reasonable attorney would consider the claim justified or worthy of litigation. *Id.* A claim is "groundless" if no facts exist which support the claim relied upon and supported by the losing party. *Id.* Here, the trial court concluded that the Inlow Children's complaint was frivolous, unreasonable, and groundless.

■ An award of attorney's fees under this statute is afforded a multi-step review. *Id.* First, we review the trial court's findings of fact under the clearly erroneous standard, and then we review the trial court's legal conclusions de novo. *Id.* Finally, we review the trial court's decision to award attorney's fees and the amount thereof under an abuse of discretion standard. *Id.*

Here, the trial court found in relevant part as follows:

9. On September 25, 1997, Great–West paid over $10 million in death benefits to Mr. Withrow ["Trustee"] on behalf of the Children's Trust....

10. Plaintiffs filed this action on July 14, 1998, claiming breach of contract by Great–West in allegedly failing to include the Direction for Settlement, which contained certain restrictive language, in the Policy.

11. Throughout the entire time this litigation was pending, the plaintiffs and their counsel knew or reasonably should have known that the Estate continued to take the position with the

IRS that the Policy proceeds were not taxable to the Estate.... [5]

12. In the Fourth Discussion Draft of a settlement proposed by the IRS, the Policy proceeds still were not deemed taxable....

13. In the same Discussion Draft the IRS valued certain stock options [Conseco] held by Mr. Inlow at the time of his death at more than twelve million dollars more than the original value on the estate tax return....

14. On January 23, 2001, despite the "strong case" that the proceeds of the Policy were not taxable, and the apparent intention of the IRS not to tax those Proceeds, counsel for the Inlow children agreed to a settlement that would include the proceeds of the Policy as taxable to the estate....

15. In return for volunteering to pay taxes on the Policy proceeds, the IRS reduced the value of the Conseco stock options discussed above by over twelve million dollars to the amount originally set forth on the federal estate tax return.

\* \* \*

17. In addition to having the Conseco options revalued, the Estate also avoided interest and penalties on the under-reported assets by way of its settlement agreement with the IRS.

18. Plaintiffs were included in the discussion about this settlement and trade with the IRS and did not oppose it....

And the trial court concluded in relevant part as follows:

29. At the time the action was filed it was frivolous, unreasonable and groundless because:

(a) Plaintiffs knew or should have known that the Trustee had already made his claim to the Policy Proceeds on the basis of the very same document (the Direction for Settlement) that they belatedly alleged was not made a part of the Policy;

(b) Plaintiffs had no standing to bring a breach of contract claim against Great–West. They were not the owners of the Policy. They could not have inherited any rights by survival or otherwise from their father, since he owned the Policy as trustee, not personally. It is instructive to note that in plaintiffs' supplemental memorandum, they never assert that they ever had standing to pursue this action.

(c) *Plaintiffs had no damages.* While they now complain that the Estate has had to pay certain taxes with respect to the Policy proceeds (amounts they volunteered to pay), those taxes had not been imposed or paid when they filed suit. They certainly had suffered no damages as trust beneficiaries, since Great–West promptly and fully paid the Policy proceeds with interest when they were claimed by the designated trustee/beneficiary.

(d) Plaintiffs' claim had no basis in fact because the direction for settlement and "restrictive provision" that they claim were not included in the Policy obviously *were* a part of the Policy. [Emphasis original]. See Application p. 1 (G 463) (incorporating, by reference, the direction

5. The Inlow Children assert that this finding is clearly erroneous. But the evidence they cite in support of that contention does not contradict the trial court's finding. As such, their contention is without merit.

for settlement into the application, and the application into the insurance contract).

(e) Plaintiffs and their counsel knew or reasonably should have known that the Estate had not reported the Policy proceeds as taxable to it when it filed its return with the IRS under the affirmations and potential penalties normally applicable to tax returns. See Discussion Draft, (reflecting initial amounts reported by Estate). Plaintiffs and their counsel likewise knew or reasonably should have known when they filed this action that the Estate continued to take the position that the Policy proceeds were not taxable to the Estate even after the filing of the initial return. *Id.* (reflecting the areas of dispute between the IRS and the Estate, but not reflecting any intent to tax Policy proceeds or any admission by the Estate that such proceeds were taxable).

(f) Under Ind.Code §§ 27–1–12–16(c) and 27–1–12–14(g), any claim with respect to the Policy proceeds was already barred when this suit was filed, by Great–West's payment to Mr. Withrow, the named beneficiary.

\* \* \*

Plaintiffs had ample time to discover that the insurance policy in question actually contained the requested language, and that payment was made pursuant to that language being in the policy.

\* \* \*

Secondly and independently, plaintiffs voluntarily agreed to incur the damages alleged through the settlement they negotiated with the Internal Revenue Service. *Plaintiffs' continued pursuit of this action against the insurer and brokers was also groundless because they voluntarily agreed to pay the very taxes they claim constitute their damages.* They could have litigated that issue with the IRS but did not.

(Emphases added unless otherwise noted).

On appeal, the Inlow Children contend that two of the trial court's findings are clearly erroneous and that three of the court's conclusions are erroneous as a matter of law. Each of those challenged findings and conclusions relates to a single issue, namely, whether the "Direction for Settlement," which designated the trustee of the Inlow Trust as the beneficiary ("the Direction"), was a part of the policy when the policy was issued. The trial court found and concluded that the Direction was a part of the policy at all times. The Inlow Children maintain that the evidence shows otherwise or, in the alternative, that the existence of a factual dispute on this issue undermines the trial court's conclusion that their action was frivolous, unreasonable, and groundless. We cannot agree.

There is ample evidence in the record to support the trial court's findings and conclusions that the Direction was a part of the policy from its inception. Thus, the Inlow Children cannot demonstrate that those findings are clearly erroneous or that those conclusions are erroneous as a matter of law. As the trial court found, the Inlow Children have never demonstrated that they sustained any damages as a result of the Appellees' alleged breaches of contract. The evidence shows that Great–West timely paid the policy proceeds to the Trustee *before* the Inlow Children filed their complaint. And there is no evidence that the Inlow Children's

decision to pay taxes on those proceeds was anything other than voluntary. Thus, even if the Inlow Children rightfully relied on the scant evidence they claim supports their contention that the Direction was not a part of the policy when it was issued, they cannot demonstrate how they sustained damages thereby. *See, e.g., Fowler v. Campbell,* 612 N.E.2d 596, 600 (Ind.Ct. App.1993) (noting essential elements of breach of contract claim include damages).

More importantly, this court has previously determined that the Inlow Children brought this action in the wrong forum, and the trial court could have awarded attorney's fees on that basis alone. *See Inlow I,* 787 N.E.2d at 390–91 (noting "text, structure, history, and purpose of Indiana probate law" dictated bringing action in probate court); *see also St. Mary Med. Ctr. v. Baker,* 611 N.E.2d 135, 138 (Ind.Ct.App.1993) (holding failure to bring action in proper forum rendered action frivolous and justified attorney's fee award), *trans. denied.*

In sum, the Inlow Children have not demonstrated that any of the trial court's findings are clearly erroneous or that any of the court's conclusions are erroneous as a matter of law. We cannot say that the trial court abused its discretion when it awarded the Appellees attorney's fees.[6] Further, we conclude that appellate attorney's fees are appropriate in this case. As such, we remand to the trial court for a hearing to determine appellate attorney's fees.

Affirmed and remanded.

BAKER, J., and MAY, J., concur.

---

6. We note that the Inlow Children do not challenge the *amounts* awarded.