# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 16 2018, 9:06 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Carlos I. Carrillo
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Katherine A. Cornelius
Deputy Attorney General
Indianapolis, Indiana

## I N  T H E
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of:

C.M. and R.M. (Minor Children),

and

R.M. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner.*

February 16, 2018

Court of Appeals Case No.
79A02-1708-JT-2024

Appeal from the Tippecanoe Superior Court

The Honorable Faith A. Graham, Judge

Trial Court Cause Nos.
79D03-1702-JT-15
79D03-1702-JT-16

**Barnes, Judge.**

# Case Summary

[1] R.M. ("Father") appeals the termination of his parental rights to his children, C.M. and R.M. (collectively, "Children"). We affirm.

# Issues

[2] Father raises three issues, which we restate as:

> I. whether the evidence is sufficient to support the termination of his parental rights;
>
> II. whether the trial court abused its discretion by denying Mother's motion to continue; and
>
> III. whether DCS filed its petition to terminate parental rights too early.

# Facts

[3] Father and S.M. ("Mother") had two children, C.M., who was born in December 2009, and R.M., who was born in November 2013. In March 2014, the Department of Child Services ("DCS") filed a petition alleging that the Children were children in need of services ("CHINS") due to Father and Mother's heroin and marijuana usage and because R.M. tested positive for cocaine and marijuana. The trial court found that the Children were CHINS, and they were placed in foster care. In October 2015, the Children were returned to Father's care, and the CHINS case was closed. At that time, Mother was incarcerated for a burglary charge.

[4] In December 2015, Father snorted spice while he was in his van in an alley with the Children. C.M. saw him put a brownish-green substance up his nose. Father then had a seizure, and C.M. had to obtain help at a nearby gas station. R.M. told investigators that "Daddy is dead." Ex. Vol. I p. 36. Father was arrested for resisting law enforcement and neglect of a dependent. The Children were again placed in foster care, and DCS filed a second CHINS petition. In February 2016, Father tested positive for amphetamine, buprenorphine, norbuprenorphine, morphine, and marijuana. A week later, he tested positive for buprenorphine and norbuprenorphine. After a fact-finding hearing, the trial court again found that the Children were CHINS. The trial court ordered Father to participate in visitation, participate in home-based case management and follow all recommendations, follow all recommendations of a previous substance abuse assessment, participate in an intensive outpatient program ("IOP") and follow all recommendations, participate in individual therapy and follow all recommendations, and submit to random drug screens.

[5] In May 2016, DCS filed a rule to show cause. At a hearing, Father admitted that he had failed to maintain contact with DCS, failed to attend a visitation, and failed to participate in any services ordered by the trial court. The trial court found Father to be in contempt but suspended his sentence as long as Father was compliant with all court orders. Father eventually began participating in services in August 2016.

[6] On October 26, 2016, the trial court held a permanency hearing. At that time, the trial court ordered Father to participate in a sexual abuse assessment due to

sexualized behaviors exhibited by C.M., a parenting assessment, and a relapse prevention or aftercare program after he finished the IOP. The trial court also ordered Father to have no contact with Mother. At that permanency hearing, the trial court noted: "Court shall not authorize DCS to file a Petition to Terminate Parental Rights for a period of ninety (90) days from today's hearing." Ex. Vol. I p. 13.

[7] The trial court held another permanency hearing on November 14, 2016. The trial court found that the objectives of the dispositional decree had not been accomplished and ordered Father to participate in the same services that it had ordered in October 2016. The trial court again noted: "Court shall not authorize DCS to file a Petition to Terminate Parental Rights for a period of ninety (90) days from today's hearing." *Id.* at 11.

[8] At a permanency hearing on January 30, 2017, the trial court approved a permanency plan of initiation of proceedings for termination of the parent-child relationship. On February 8, 2017, DCS filed a petition to terminate Father's and Mother's parental rights to the Children.

[9] A hearing on the petition was held in May 2017. At the start of the hearing, Mother requested that the hearing be continued to give her time to be released from jail and start services. Father joined in the motion, but the trial court denied it. The trial court entered findings of fact and conclusions thereon granting DCS's petition to terminate the parental rights of both Father and Mother. Regarding Father, the trial court found:

18. Father was himself a victim of verbal, physical, and sexual abuse during his childhood. Father was expelled from high school and later obtained a GED. Father is currently employed at Subaru through a temporary agency although he failed to provide copies of paystubs until recently. Father does not have a valid driver's license.

19. Father completed a Pre-Trial Diversion Agreement for Theft (Class D Felony) in February 2011. Father was convicted of Conversion (Class A Misdemeanor) on November 5, 2014. Father reports other criminal history involving marijuana-related arrests, theft, and illegal possession of a handgun.

20. Father has an extensive history of substance use. Father completed an intake assessment at Wabash Valley Alliance on August 9, 2016. Father acknowledged a heroin/opiate addiction and was referred for a substance abuse evaluation. Father completed a substance abuse evaluation on August 10, 2016. Father was diagnosed with Opioid Dependence and Cannabis Abuse. Prior attempts at substance abuse treatment were unsuccessful.

21. During the first CHINS case, Father did not complete outpatient substance abuse treatment but instead participated in suboxone replacement treatment. During the second CHINS case, Father participated in an intensive outpatient treatment program (IOP) and a support group but failed to attend 12 Step meetings. Father commenced IOP on September 2, 2016 and completed on December 9, 2016. During treatment, Father identified triggers and developed coping skills to address known triggers. Father has continued to regularly attend a weekly social support group at

Wabash Valley Alliance. Father also participated in counseling to address unhealthy relationships and boundaries with some progress.

22. During the second CHINS case, Father tested positive for the presence of drugs on 02/11/2016 (buprenorphine/amphetamine/morphine/marijuana) and 02/18/2016 (buprenorphine). During IOP, drug screens were collected once or twice per month with negative results. Father failed to submit to all drug screens requested including as recently as 02/13/2017 and 03/16/2017.

23. Father was found in contempt on May 16, 2016 for failure to maintain contact with DCS, failure to participate in services ordered, and failure to attend all scheduled visits. A Writ of Body Attachment was issued for Father's failure to appear at hearing on February 8, 2017 and later recalled when Father appeared at a subsequent hearing.

24. Although Father has consistently attended visits, the level of supervision has remained fully supervised. Father currently visits every Sunday from 11:00AM to 3:00PM. Father is affectionate and bonded with the children. Father's interactions with the children are appropriate.

25. At the onset of the second CHINS case, Father was "couch surfing" in unsuitable residences. Father obtained a one (1) bedroom apartment in which he has resided for approximately one (1) year. However, the residence is not suitable for the children for more than short visits. Although a bug infestation was eventually remedied, the cleanliness of the home still does not

meet minimum standards at times. There are no beds for the children or the Father with the exception of a single stained mattress that should be discarded. There is not always an adequate food supply. The locking mechanism on the door does not work and is a safety hazard.

26. Despite participation in case management services, Father had difficulty maintaining a budget to meet his own expenses let alone the added cost of two (2) children. Father often utilized funds on unnecessary items leaving him unable to pay bills on time. Father was never able to purchase adequate furnishings for the home.

Appellant's App. Vol. II pp. 72-73. Father now appeals.[1]

# Analysis

## I. Sufficiency of the Evidence

Father challenges the termination of his parental rights to the Children. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *In re I.A.*, 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" *Id.* (quoting *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the

---

[1] Mother does not appeal the trial court's order.

most valued relationships in our culture.'" *Id.* (quoting *Neal v. DeKalb County Div. of Family & Children*, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize, of course, that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. *Id.* Thus, "'[p]arental rights may be terminated when the parents are unable or unwilling to meet their parental responsibilities.'" *Id.* (quoting *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*).

[11] When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. *Id.* We consider only the evidence and reasonable inferences that are most favorable to the judgment. *Id.* We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. *Id.* (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Father's parental rights, as required by Indiana Code Section 31-35-2-8(c). When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second, we determine whether the findings support the judgment. *Id.* We will set aside the trial court's judgment only if it is clearly erroneous. *Id.* A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. *Id.*

[12] Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true,

the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

(B)     that one (1) of the following is true:

(i)     There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii)    There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii)   The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C)     that termination is in the best interests of the child; and

(D)     that there is a satisfactory plan for the care and treatment of the child.

DCS must establish these allegations by clear and convincing evidence. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1234 (Ind. 1992).

### A.  Changed Conditions

[13]    Father challenges the trial court's finding of a reasonable probability that the conditions resulting in the Children's removal or the reasons for placement

outside Father's home will not be remedied.[2]  In making this determination, the trial court must judge a parent's fitness to care for his or her child at the time of the termination hearing and take into consideration evidence of changed conditions.  *In re J.T.*, 742 N.E.2d 509, 512 (Ind. Ct. App. 2001), *trans. denied*. The trial court must also "evaluate the parent's habitual patterns of conduct to determine the probability of future neglect or deprivation of the child."  *Id.*

[14]  On this issue, the trial court concluded:

> There is a reasonable probability the conditions that resulted in the removal of the children from the home or the reasons for continued placement outside the home will not be remedied. Neither parent has demonstrated the ability or willingness to make lasting changes from past behaviors.  There is no reasonable probability that either parent will be able to maintain stability to care and provide adequately for the children.

Appellant's App. Vol. II p. 73.

---

[2] Father also argues that the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of the Children is clearly erroneous.  Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. Subsection (b)(2)(B)(iii) is inapplicable here.  Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that either: (1) the conditions that resulted in the Children's removal or the reasons for placement outside the home of the parents will not be remedied, or (2) the continuation of the parent-child relationship poses a threat to the well-being of the Children.  The trial court found a reasonable probability that the conditions that resulted in the Children's removal and continued placement outside Father's home would not be remedied, and there is sufficient evidence in the record to support the trial court's conclusion.  Thus, we need not determine whether there was a reasonable probability that the continuation of the parent-child relationship poses a threat to the Children's well-being. *See, e.g., Bester v. Lake County Office of Family & Children*, 839 N.E.2d 143, 148 n.5 (Ind. 2005); *In re T.F.*, 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), *trans. denied*.

[15]     On appeal, Father argues that he did not receive adequate services in the first CHINS case and that he "actively engaged" in proper services in the second CHINS case. Appellant's Br. p. 33. According to Father, he has not had a positive drug screen since February 2016, and substance abuse is no longer an issue. Father contends that he has made improvements in therapy, that he had a stable job and home, and that he was working on his financial stability.

[16]     The Children were initially removed from Father and Mother in March 2014 due to Mother and Father's drug usage. Although that CHINS case was eventually closed in October 2015 and the Children were placed with Father, Father soon relapsed. In December 2015, Father snorted spice in a vehicle with the Children and had a seizure. Six-year-old C.M. had to get help for Father, R.M. feared Father was dead, and the Children were removed again. Father had a positive drug screen in February 2016, testing positive for amphetamine, buprenorphine, norbuprenorphine, morphine, and marijuana. A week later, he tested positive for buprenorphine and norbuprenorphine. Although Father claims that he last used illegal drugs in March 2016, Mother testified that Father was using drugs between April and June 2016. As of October 2016, DCS reported to the trial court that Father had been notified to submit to drug screening thirty-two times and that he had submitted only seven screens.

[17]     Although Father was ordered to complete services, he failed to do so and was found in contempt in May 2016. He waited until August 2016 to begin participation in the services. Father completed a substance abuse assessment in August 2016 and then began an IOP, which he completed in December 2016.

However, Father missed drug screens on February 13, 2017, and March 16, 2017. He began home-based counseling in October 2017. The cleanliness of Father's home was "kind of like a roller coaster," meaning that sometimes it was acceptable but most of the time it was "below standards." Tr. Vol. II p. 59. He began individual therapy in November 2016 and had been making progress. Father was continuing to work on his unhealthy relationships. Father's current residence was not suitable for the Children, and he continued to struggle to resolve legal issues that resulted in the loss of his driver's license. Although Father was working, he continued to have financial difficulties. Father had been visiting with the Children consistently but never progressed beyond supervised visitations.

[18] We acknowledge that Father made some progress late in the CHINS proceedings. However, DCS properly notes that, "after almost three years of services Father had not reached a point where relapse was unlikely, had not obtained adequate housing or maintained the housing he had, and Father continued to make poor financial choices which would perpetuate the risk the Children's needs would not be met." Appellee's Br. p. 25. Father cannot simply miss drug tests and claim that he has been drug free since March 2016. The risk for relapse is significant, and we cannot say that the trial court's finding regarding the reasonable probability the conditions that resulted in the removal of the children from the home or the reasons for continued placement outside the home will not be remedied is clearly erroneous.

## B. Best Interests

[19] Father challenges the trial court's finding that termination of his parental rights is in the Children's best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. *D.D.*, 804 N.E.2d at 267. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. *Id.*

[20] Father argues that he had been consistently visiting with the Children, showed appropriate parenting skills, was bonded with the Children, and had made significant improvements through services. We also acknowledge that the Children are bonded with Father. C.M.'s therapist testified that C.M. misses her parents and worries about them. The therapist testified, however, that it was in C.M.'s best interest to be in a safe environment away from drug usage. DCS presented evidence that both the family case manager and the CASA believed that Father had not made enough progress during the CHINS proceedings. For many months during the second CHINS proceeding, Father failed to participate in services, was actively using drugs, and made no progress whatsoever. Late in the CHINS proceeding, Father began participating, but given his late participation and missed drug screens, it is unclear that Father's progress will be permanent. The trial court found that termination of Father's parental rights was in the Children's best interests, and under these circumstances, we cannot say that the finding is clearly erroneous.

## II. Continuance

Father argues that the trial court abused its discretion by denying Mother's motion for a continuance of the termination hearing. A trial court's decision to grant or deny a motion to continue is subject to abuse of discretion review. *In re K.W.*, 12 N.E.3d 241, 243-44 (Ind. 2014). "'An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion,' but 'no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial.'" *Id.* at 244 (quoting *Rowlett v. Vanderburgh Cnty. Office of Family & Children*, 841 N.E.2d 615, 619 (Ind. Ct. App. 2006), *trans. denied*).

At the May 2017 hearing, Mother requested a continuance, and Father joined in the motion. Mother testified that she expected to be released from jail by July 2017. She requested the continuance so that she could be released from jail and start services. Mother does not appeal the termination of her parental rights, and Father has not demonstrated how he was prejudiced by the denial of Mother's motion. Under these circumstances, we cannot say that the trial court abused its discretion.

## III. Filing of Petition to Terminate Parental Rights

Father also argues that DCS's filing of the petition to termination Father and Mother's parental rights was untimely. Father relies on trial court orders from October 26, 2016, and November 14, 2016. On October 26, 2016, the trial court held a permanency hearing. At that time, the trial court noted: "Court

shall not authorize DCS to file a Petition to Terminate Parental Rights for a period of ninety (90) days from today's hearing." Ex. Vol. I p. 13. The trial court held another permanency hearing on November 14, 2016, and similarly noted: "Court shall not authorize DCS to file a Petition to Terminate Parental Rights for a period of ninety (90) days from today's hearing." *Id.* at 11. At the next permanency hearing on January 30, 2017, the trial court approved a permanency plan of initiation of proceedings for termination of the parent-child relationship. On February 8, 2017, DCS filed a petition to terminate Father's and Mother's parental rights to the Children.

[24] The February 8, 2017 filing was eighty-six days after the November 14, 2106 hearing. Consequently, Father argues that DCS filed the petition to terminate his parental rights too early. According to Father, the trial court "lacked jurisdiction to grant said petition." Appellant's Br. p. 40.

[25] Our supreme court has "clarified 'the nature of jurisdiction in Indiana trial courts' and held that the concept of 'jurisdiction over a particular case' has been abolished." *Brown v. Lunsford*, 63 N.E.3d 1057, 1060 (Ind. Ct. App. 2016) (quoting *R.L. Turner Corp. v. Town of Brownsburg*, 963 N.E.2d 453, 457 (Ind. 2012)). "Attorneys and judges alike frequently characterize a claim of procedural error as one of jurisdictional dimension. The fact that a trial court may have erred along the course of adjudicating a dispute does not mean it lacked jurisdiction." *Id.* (quoting *K.S. v. State*, 849 N.E.2d 538, 541 (Ind. 2006)).

> To act in a given case, a trial court must possess both subject matter jurisdiction and personal jurisdiction. Subject matter jurisdiction exists when the Indiana Constitution or a statute grants the court the power to hear and decide cases of the general class to which any particular proceeding belongs. Personal jurisdiction exists when a defendant both has sufficient minimum contacts within the state to justify a court subjecting the defendant to its control, and has received proper notice of a suit against him in that court.

*R.L. Turner Corp.*, 963 N.E.2d at 457 (citing *K.S.*, 849 N.E.2d at 538, 540).

[26] Father's claim does not implicate subject matter jurisdiction or personal jurisdiction. Rather, this is a claim of procedural error, which is subject to waiver. *K.S.*, 849 N.E.2d at 542. Father did not raise this objection with the trial court, and it is waived.

[27] Further, we note DCS argues on appeal that it does not need permission of the trial court to file a petition for termination of parental rights, and Father cites no authority for the proposition that DCS does need such permission. Father's argument is also waived for failure to make a cogent argument. *See* Ind. Appellate Rule 46(A)(8)(a).

# Conclusion

[28] The evidence is sufficient to support the termination of Father's parental rights to the Children. The trial court did not abuse its discretion by denying Mother's motion to continue, and Father has waived his argument that DCS's

filing of the petition to terminate Father's parental rights was premature. We affirm.

[29] Affirmed.

Najam, J., and Mathias, J., concur.